Jackson vs. Lemle et al.

## No. 1095.

### POMPEY JACKSON VS. JOS. LEMLE ET AL.

Where a sale is made with the right of redemption, and the term expires, within which the price is to be returned, it is not required that the purchaser should have the failure to redeem judicially declared before he can become or be regarded as the absolute owner of the property. No divestiture of the right of redemption results unconditionally from the default of the seller.

Leasing the property by the vendor after the time for redeeming has passed, in the absence of error or fraud, concludes him from asserting title thereto. When after the sale the vendor continues to occupy and cultivate the land, and the purchaser to furnish supplies, payments made by the former to the latter, with or without agreement to that effect, must be imputed to the privilege for such supplies.

Where parties have the legal capacity to contract, mere ignorance on the part of one of them, and inability from such cause to understand the contract after it is read to him, is not sufficient ground to avoid the same.

APPEAL from the Fifth District Court, Parish of Ouachita. *Richardson*, J.

*J. H. Dinkgrave* and *Robt. Ray* for Plaintiff and Appellant.

*Stubbs & Russell* for Defendants and Appellees:

1. After the delay granted in a *vente a remere* has elapsed, whether the act be considered as such or a common law mortgage, unless fraud or want of consideration or novation be shown, the vendee's title is unassailable. Hearnan vs. Glades, 29 An.; W. R. Longue, 638.

2. A contract by which a plantation is sold for a sum which the vendor agrees to advance in yearly instalments to the vendee for the cultivation of the property sold, with a stipulation that the vendee promises to reconvey the plantation to the vendor on reimbursement of the money and interest, is not one of hypothecary or pignorative security, but it is a regular sale, with the right of redemption, the title of which is only defeasible by the exercise of the right of redemption. Levy vs. Ward, Admx., 32 An. 784.

3. When one debt is secured by mortgage, and the other, if for supplies and cash furnished the farmer to make a crop, in the latter case the law provides a special privilege, and the

Jackson vs. Lemle et al.

proceeds of crop must first be imputed to the debt of the furnisher of supplies. Richardson vs. Dinkgrave, 26 An. 657.

4. The lessee cannot contest the title of his lessor, *a fortiori* that of his lessor's vendee. Pothier Oblig. No. 20 of Contract of Lease, 133; 10 La. 360; 8 R. 213; 23 An. 585; 26 An. 189; 29 An. 206.

5. A lease of land, unless recorded like a sale, cannot affect the lessor's vendee. 3 An. 198.

The opinion of the Court was delivered by

Todd, J. The plaintiff, alleging himself the owner of the land described in his petition, that he had once transferred it to Lemle, one of the defendants, as security for a debt which he, plaintiff, had afterwards paid, alleging also his possession of the land, and that Lemle was attempting to sell it to Mrs. Seal, the other defendant, asked for and obtained an injunction restraining Lemle from putting Mrs. Seal in possession of the land, and the latter from taking possession of it, and asked to be decreed the owner of the property, etc.

Lemle, after the general issue, for answer alleged, that he had bought the land of the plaintiff, granting in the act of sale the right to redeem it within a stated time, by repayment of the price; that no part of the price has been returned, and that after the time to redeem had expired he had leased the property to the plaintiff, and subsequently sold it to his co-defendant, Mrs. Seal.

Mrs. Seal answering, asserted her ownership of the land under her purchase from Lemle. From a judgment rejecting his demand, the plaintiff has appealed.

The evidence establishes that the plaintiff sold the land in question to Lemle, in 1879, by public act. The act declaring that the price was $480, cash in hand paid; and in consideration of the same, that Jackson bargains, sells, transfers and delivers the property. Then follows the following stipulations:

"It is agreed and understood by and between the parties to this act, that the said Pompey Jackson is to have and herein retain the right to redeem said property hereinbefore described as sold by him to said Lemle, by repaying to him, the said Lemle, the price stated herein, provided he exercises his said right of redemption by 1st day of March, 1881; and provided further, the said Pompey Jackson, at the same time and as a condition precedent to his right of redemption, shall fully reimburse the said Lemle for all money he shall have paid or liability incurred on account of taxes, and for the preservation of the property and for all improvements he may place thereon, with the consent and approval of his vendor, during the time within which said right of redemption may be exercised. The parties declaring, emphatically, the true intent and meaning hereof to be, that if Pompey

Jackson shall, within the time stated, repay the price herein stated to said Joshua Lemle, together with the outlay he may make for taxes and the preservation and improvement of the property, then the said Lemle shall reconvey said property to Pompey Jackson ; and further, if the said right of redemption is not exercised in the time stated, and the said Lemle reimbursed, as above provided, then his ownership of the property shall be absolute and unconditional."

It is further shown, that after the date mentioned for the redemption of the land, the plaintiff leased the same from Lemle, and continued to occupy and cultivate it up to the time of the institution of this suit.

The act under which Lemle claims the land is undoubtedly a sale with the equity of redemption. The sale was by public act, and without the stipulation of delivery expressed in the act, in legal contemplation, possession followed the title, and the possession of Jackson, after the act, was the possession of Lemle. Apart from the conditions respecting the right to redeem, a sale with the equity of redemption does not differ, as far as relates to the possession of the property as affected by the passing of the act, from ordinary sales. From the moment of the execution of the act the vendee becomes the master of the property, his title subject to be divested only by the exercise of the right to redeem, and unless that right is exercised within the term stipulated, he remains absolute owner of the property. Nor is it incumbent on the vendee, after the failure to redeem, to have such failure judicially declared, as contended by plaintiff's counsel, in order to confirm his title to the property, or to be recognized and to become its absolute owner. This is a legal sequence of the failure of the vendee to *redeem* within the prescribed time, and no action on the part of the vendee is required to establish it.

On the contrary, it is incumbent on the vendor in such a sale, who asserts that he has repaid the price, as the plaintiff has done in the instant case, to prove it.

The evidence entirely fails to satisfy us that plaintiff has ever paid back to Lemle the price he acknowledged to have received for the land. This is an indispensable condition to his recovery, and he must establish it to a certainty. He pretends to have paid it by cotton, delivered from year to year, and which, it is claimed, should be imputed to its payment, but the proof is positive that the cotton was applied, according to the understanding of the parties, to the payment of the privilege debts for supplies. And, without such understanding, it would be proper thus to impute it. Richardson vs. Dinkgrave, 26 An. 657. In fact, in the absence of fraud or error, the leasing of the property by

Jackson would be conclusive of itself of his forfeiture of the right to redeem, and an irrevocable admission of Lemle's title to, and ownership of, the land. Fraud is charged, but it must be proved, like any other fact, and this proof is here wanting.

The bargain may have been a hard one, and one to which the plaintiff was driven by pressing necessities; but the plaintiff cannot be relieved of contracts of this kind by the plea of ignorance and illiteracy. That ignorance may suffer in its sharp conflicts with superior sagacity, greed and cunning, is one of the penalties of citizenship, for which no immunity can be judicially recognized, simply out of regard for "race, color or previous condition." Where a contract is made between those having the capacity to contract, that contract becomes the law to the parties, from the consequences of which courts are powerless to relieve them, when that contract has been fully understood, or when a fair and full opportunity has been afforded for a complete understanding of it.

That the plaintiff understood the terms and meaning of the several acts signed by him we do not know; that he had an opportunity to understand, and was fully informed respecting the same, the evidence leaves little room to doubt. If he did not understand, it was certainly his misfortune.

With every disposition to relieve the plaintiff from the effect of his unfortunate contract, we find ourselves powerless, under the evidence, to do so. The judgment of the lower court is therefore affirmed, with costs.